UNITED STATES of America

v.

**Alonzo Christopher YOUNG, Defendant.**

**No. CR.02–01080N.**

United States District Court, M.D. Alabama, Northern Division.

Oct. 22, 2002.

_____

Verne H. Speirs, Montgomery, AL, for Plaintiff.

Joseph P. Van Heest, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION

HOBBS, Senior District Judge.

### Introduction

This criminal action is before the court on the Defendant's (1) Motion to Suppress Statement (Doc. # 19) and (2) Motion to Suppress Physical Evidence Found During Illegal Search (Doc. # 20). The Magistrate Judge, the Honorable Delores R. Boyd, entered two Recommendations. In the first Recommendation (Doc. # 31), Magistrate Judge Boyd recommended that the Motion to Suppress Physical Evidence be granted. In the second Recommendation (Doc. # 32), Magistrate Judge Boyd recommended that the Motion to Suppress Statement be denied. Following Magistrate Judge Boyd's recommendation that the Motion to Suppress Physical Evidence be granted, the United States filed Objections to Finding of the Magistrate Judge Regarding Suppression of Physical Evidence (Doc. # 34).

The court ACCEPTS and adopts the Recommendation of the Magistrate Judge that Defendant's Motion to Suppress Statement be denied.

For the reasons set forth in this memorandum and after a *de novo* review of the facts of the case and the submissions of the United States and the Defendant, the court REJECTS the Recommendation of the Magistrate Judge that the Defendant's Motion to Suppress Physical Evidence be granted. *See Jeffrey S. by Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir.1990) (if objections to magistrate's findings are filed, the district court must review the matter *de novo* ). The court entered an order on October 18, 2002, denying both of the Defendant's motions.

### Background

The court lists the facts of this case as taken from the Magistrate Judge's Recommendation (Doc. # 31):

"On December 1, 2000, Sgt. N.N. Drummond, a narcotics investigator with the Montgomery Police Department ("MPD"), applied to a municipal judge for an 'anytime, no knock' search warrant for Room 320 of the Villager Lodge motel in Montgomery, Alabama. Because it is undisputed that the [Drummond's] affidavit supplied the only information on probable cause for the search warrant, it is reproduced below in its entirety:

Before me, the Honorable Johnny Hardwick, Judge of the Municipal Court of the City of Montgomery, Montgomery, Alabama, the undersigned, Sgt. N.N. Drummond personally appeared, and stated that he is an investigator with and for the Narcotics Bureau of the Montgomery Police Department, Montgomery, Alabama, and he has reason to believe that, cocaine hydrochloride, cocaine base and marijuana, is being stored and sold from 2750 Chestnut Street, Room 320, Montgomery, Alabama. The controlled substances are being stored and sold by a Black male, AKA 'Gremlin.' The residence is described as a single story motel room at Villager Lodge. This is in violation of Code of Alabama 1975 13A–12–211, 212, and 213. The following is probable cause, in support of an anytime, 'no knock' search warrant.

Probable Cause being that on November 30, 2000, the [MPD] received an anonymous tip from the secret witness report, that a subject was selling crack cocaine from room 320 of the Villager Lodge. The caller went on to day [sic] that the subject was threatening to shoot people that owed him money.

Further Probable Cause being that on December 1, 2000, this affiant received information from a confidential source that he/she had just seen two ounces of cocaine hydrochloride in room 320 of the Villager Lodge. The confidential source went on to state that he/she knew the subject's first name to possible [sic] be 'Alonzo,' and uses the nickname of 'Gremlin.' The confidential source described the subject as being a black male approximately 6'2" tall, weighing 200 pounds, with low hair and being dark in complexion.

Further probable cause for a 'no knock' search warrant being that the confidential source saw a .45 caliber handgun in the room.

The foregoing is based on the personal knowledge of this affiant, other members of the Narcotics Bureau and facts obtained by the Montgomery Police Department Narcotics and Intelligence Bureau, Montgomery, Alabama, and is made for the purpose of securing an anytime 'no knock' search warrant, for 2750 Chestnut Street, Room 320, Montgomery, Alabama, and is for marijuana, cocaine, and any other controlled substances, to include: drug paraphernalia, records of drug transactions, drug buy monies, weapons, and any items listed in Attachment I."

Acting pursuant to the search warrant issued solely on Sgt. Drummond's affidavit, MPD officers proceeded on December 1, 2000, to search the listed motel room, seizing therefrom a handgun, ammunition, and drugs, and also arresting Young [the Defendant] on state charges for unlawful possession of a controlled substance. On June 27, 2002, the one-count federal indictment herein charged Young, asserted to be a previously convicted felon, with being in possession of the handgun and ammunition seized from his motel room on December 1, 2000, described with particularity as 'a Ruger, .45 Caliber, model 90, serial number 660–02643, and approximately 27 (twenty-seven) .45 caliber rounds.'" Recommendation of the Magistrate Judge, Doc. # 31, pp. 1–3.

Defendant argues that the affidavit was insufficient to establish probable cause. Under the totality of the circumstances test of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Defendant states that the reports received from the anonymous tip and the confidential source did not provide any information that established the identity, credibility, or veracity of either source. Furthermore, the Defendant avers that the MPD failed to independently investigate and verify any of the information received from the tip or confidential source. The Defendant further alleges that the anonymous tipster and the confidential source may have been the same person, because the information each provided is similar. Relying on *United States v. Brundidge,* 170 F.3d 1350 (11th Cir.1999), the Defendant argues that "[t]he application for the search warrant utterly fails to identify any basis to establish the informant's reliability. It merely seeks to establish reliability based on the ends—that the search ultimately found a firearm in the motel room." Motion to Suppress Physical Evidence, p. 3.

The United States responds with two principal arguments. First, also relying on *Brundidge,* the United States argues that the specificity of the confidential source's description of what he/she saw in Room 320 establishes the veracity of the confidential source. With the confidential source's veracity established and with the confidential source's corroboration of the anonymous tip, an independent police investigation was unnecessary to establish probable cause. Under the *Gates* totality of the circumstances test, the United States asserts that Sgt. Drummond did not have to make an independent statement in his affidavit as to the reliability or veracity of the confidential source. The government submits that there was sufficient probable cause to justify the search warrant, even absent independent police corroboration.

Second, if the court should find that probable cause for the search warrant was lacking, the United States argues that the good faith exception from *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), controls this case and the fruits of the search should be admissible. Under this argument, the government states that the MPD officers should not be penalized for the error, if any, by Judge Hardwick in determining that probable cause existed to justify a search of Room 320. The government also alleges that this case does not fall under any of the four exceptions to the *Leon* good faith exception rule.

### Discussion and Analysis

Judge Hardwick reviewed Sgt. Drummond's affidavit and determined that probable cause to issue a search warrant for Room 320 did exist. Conversely, Magistrate Judge Boyd also reviewed Drummond's affidavit but found that probable cause was lacking. The question of proba-

ble cause in this case could likely be debated among many similarly-experienced jurists, and the conclusions would likely mirror those of either Judge Boyd or Judge Hardwick. *See Leon,* 468 U.S. at 914, 104 S.Ct. 3405 ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." (citing *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969))). However, the law only requires Drummond to obtain a warrant from a single neutral and detached magistrate or judge. *See U.S. Const. amend. IV* ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *Ala. Code* § 15–5–5 ("If the judge or the magistrate is satisfied of the existence of the grounds of the application or that there is probable ground to believe their existence, he must issue a search warrant ...."); *Ala. R.Crim. P.* 3.7 ("[A] search warrant authorized by this rule may be issued by: ... (ii) A municipal judge, if the search is to be conducted within the police jurisdiction of the municipality."). Once that magistrate or judge determines that there is probable cause to justify the warrant, Drummond has fulfilled his obligation to present evidence showing that probable cause exists, and he must comply with the law and execute the search warrant. *See Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring) ("[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."). Thus, even if this court were to conclude that Judge Hardwick's probable cause determination was erroneous, Drummond relied on the warrant and

acted within its scope in executing the search, and this case must be analyzed under the good faith exception to the exclusionary rule announced in *Leon.*

■ In *Leon,* the Supreme Court held that evidence seized by a law enforcement officer who was acting in good faith and within the scope of a search warrant, issued by a neutral and detached magistrate and even if later held invalid due to a lack of probable cause, should not be suppressed. 468 U.S. at 925–26, 104 S.Ct. 3405. The defendants in *Leon* sought to suppress the fruits of a search performed under a search warrant issued by a state court judge, and the federal trial court granted the suppression motion after determining that the search warrant was not supported by probable cause. *Id.* at 902–04, 104 S.Ct. 3405. After the court of appeals affirmed the suppression, the Supreme Court addressed whether the Fourth Amendment's exclusionary rule should be modified to admit evidence seized in reliance on a search warrant even if it is later held to be invalid. *Id.* at 900, 104 S.Ct. 3405. The Court's majority opinion focused on the role of the exclusionary rule to curb police misconduct. *Id.* at 916, 104 S.Ct. 3405; *see United States v. Peltier,* 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *United States v. Martin,* 297 F.3d 1308, 1320 (11th Cir.2002). The court noted that this mission of deterring police misconduct has little effect on a magistrate or judge who issues search warrants. *See Leon,* 468 U.S. at 916, 104 S.Ct. 3405 ("[M]ost important, we discern no basis ... for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate."). As a result, the exclusionary rule accomplishes its deterrent effect when it encourages law enforcement officers to comply with the strictures of the Fourth Amendment and

seek a search warrant prior to searching a person's house, papers, or effects. *See id.* at 918–21, 104 S.Ct. 3405. Once the law enforcement officer has the magistrate or judge's determination that probable cause for a search does exist, *Leon* teaches that the magistrate's error in wrongfully determining that probable cause exists is not to be visited upon the officer by suppressing evidence seized in the search. *Id.* at 925–26, 104 S.Ct. 3405. Accordingly, the Supreme Court, even though it accepted the judgment of the trial court and the court of appeals that the affidavit did not meet the test of probable cause, reversed the Court of Appeals after finding that "the extreme sanction of exclusion is inappropriate" since the evidence seized was in accordance with a search warrant. *Id.* at 926, 104 S.Ct. 3405.

There are four exceptions to *Leon,* and the Eleventh Circuit's recent opinion in *Martin* lays these out concisely:

(1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending on the circumstances of the particular case, a warrant is "so facially deficient—i.e., in the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*Martin,* 297 F.3d at 1313 (quoting *Leon,* 468 U.S at 923, 104 S.Ct. 3405). There is no evidence or allegations that Judge Hardwick "wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales.*" *Id.; see Lo–Ji Sales,* 442 U.S. at 326–28, 99 S.Ct. 2319 (town justice, who issued search warrant, accompanied law enforcement officers to adult bookstore and acted as an adjunct member of law enforcement instead of a neutral and detached magistrate by personally reviewing materials to determine if they were obscene under New York law and should be seized). Judge Hardwick did not engage in any conduct which would support a claim that he abandoned his judicial role. Likewise, there is no evidence or allegations that Drummond misled Judge Hardwick with any information that Drummond knew to be false or should have known was patently false. The statements in the affidavit are not challenged as being false. Additionally, the search warrant was not facially deficient; it identified the room at the Villager Lodge with its correct address and with a description of the building. The search warrant was limited and very specific as to the objects of the search and it also specifically described the physical features of the person suspected to be selling cocaine from the room. The affidavit gave a suspected alias and a partial name. Consequently, the Defendant cannot succeed in his motion to suppress based on the first, second, or fourth exception to the *Leon* good faith rule.

The Defendant relies on the third exception and argues that the affidavit supporting the warrant was so obviously lacking in indicia of probable cause that Drummond could not reasonably rely on the determination that probable cause did exist. The court must thus focus on the information provided in the affidavit to determine if it reasonably indicates that probable cause existed to search room 320. On November 30, 2000, an anonymous tipster reported that a person was selling crack cocaine from room 320 of the Villager Lodge and that the person was threatening to shoot people who owed him money. The police

took no action to independently corroborate this tip, but they also did not hasten to the county courthouse to seek a search warrant based solely on the tip. The next day, December 1, 2000, Drummond received a report from a confidential source that indicated that the source had seen two ounces of cocaine hydrochloride in room 320 of the Villager Lodge, along with a .45 caliber handgun. The confidential source also provided a description of the person suspected of selling cocaine, to wit, that he is a black male, 6'2", 200 pounds with low hair and a dark complexion. The confidential source's report confirmed three things from the anonymous tip: (1) that a person was selling cocaine from room 320; (2) that cocaine, specifically two ounces of cocaine hydrochloride, was present in room 320; and (3) that a weapon, specifically a .45 caliber handgun, was also present in room 320 (allowing the suspect to carry out a threat to shoot persons who owed him money). The government also contends that the confidential source's degree of specificity in describing the weapon, the illegal drugs, and the person·in room 320 confirmed the source's veracity. The source reported that: "(1) two ounces, (2) of cocaine hydrochloride, (3) in room 320, (4) of the Villager Lodge, (5) the name of the subject and his street name, (6) a detailed physical description of the suspect, (7) the suspect was armed, (8) with a '.45 caliber handgun,' (9) in room 320." Objections to Findings of the Magistrate Judge, p. 7. *See Brundidge,* 170 F.3d at 1353 ("[T]he level of detail meant that the

[confidential source] was unlikely to lie . . . ."). Drummond sought a search warrant only after receiving the report of the confidential source, which corroborated some of the details of the anonymous tip.

█ Although this court is not required to determine whether there was probable cause to justify the issuance of the warrant, the court notes that the task for the issuing magistrate or judge is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. Under this totality of the circumstances test, the court agrees with the government that the confidential source's specific and detailed information, allegedly the product of first-hand knowledge, provided a basis for Judge Hardwick to determine the source's veracity.[1] *See id.* at 233, 103 S.Ct. 2317 (explaining that a deficiency in the veracity of a source may be compensated for with other factors, including basis of knowledge). Independent police corroboration is not a per se rule under the totality of the circumstances test. *See Brundidge,* 170 F.3d at 1353 ("[R]equiring independent police corroboration—as a per se rule in each and every case—is contrary to *Gates* . . . .").

The task for this reviewing court is only to ensure that the judge had a "substantial basis for" concluding that probable cause existed.[2] *Gates,* 462 U.S. at 244–45,

1. The issuing judge in this case could reasonably conclude that where a tip came through a secret witness's anonymous phone call advising that cocaine was being sold from a particular room in a local motel, and that the occupant was threatening to shoot persons who owed him money, and the next day a confidential informant entered that same room and observed there two ounces of cocaine hydrochloride and a .45 caliber handgun, there is "a fair probability that contra-

band or evidence of a crime will be found" when a search is conducted that same day. *Gates,* 462 U.S at 238, 103 S.Ct. 2317. Some would strongly suggest that there is more than a "fair probability" but rather a high likelihood that such evidence will be found.

2. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in pre-

103 S.Ct. 2317. The important fact is that Judge Hardwick analyzed Drummond's affidavit and concluded that probable cause was present.[3] The affidavit provided sufficient indicia of probable cause, and Drummond's belief in its reliability was not unreasonable or unfounded.[4] Drummond received the information from the anonymous tip about the activities in room 320 on November 30 and from the confidential source on December 1. He then immediately sought a search warrant based upon this fresh information. The information linked the suspect to room 320 and room 320 to criminal activity. This affidavit was not a "bare-bones" affidavit simply containing conclusory allegations of criminal wrongdoing.[5] *See United States v. Glinton,* 154 F.3d 1245, 1257 (11th Cir. 1998) (holding that "bare-bones" affidavits fail to satisfy the *Leon* rule). The affidavit contained detailed information from two sources indicating that specific criminal activity, *i.e.* the selling of cocaine, was occurring in room 320 of the Villager Lodge.

Drummond lawfully and reasonably relied on the search warrant issued by Judge Hardwick, properly searched room 320, and recovered physical evidence of criminal activity on the part of the Defendant. The facts of this case do not fall into any of the four exceptions to the *Leon* good faith exception rule. The evidence was seized lawfully by an officer relying, in good faith, on a search warrant issued by a municipal judge. Accordingly, the Defendant's Motion to Suppress Physical Evidence is due to be DENIED.

paring their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon,* 468 U.S. at 926, 104 S.Ct. 3405. In this case there is no basis for such a determination.

3. The Eleventh Circuit in *Martin* explained that its role in evaluating a search under *Leon's* good faith exception does not require the court "to determine whether there was sufficient probable cause to justify the search," but instead requires a determination of whether the officer's reliance on the search warrant was entirely unreasonable. *Martin,* 297 F.3d at 1315.

4. Probable cause "is a fluid concept" that turns "on the assessment of probabilities in particular factual contexts." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. In order to show that Drummond's reliance on the search warrant was reasonable, the government must show that the Defendant is linked to room 320 and that room 320 is linked to criminal activity.

*Martin,* 297 F.3d at 1314. The information must also be fresh and should explain an informant's veracity and basis of knowledge under a totality of the circumstances approach. *Id.*

5. The thorough scrutiny of Sgt. Drummond's affidavit in this case serves as a reminder to the law enforcement officers who draft affidavits in their efforts to secure search warrants that they must strive to write clear and concise affidavits that provide sufficient information for a reviewing magistrate to determine if probable cause exists to justify a search. In many cases, as in this one, the affidavit will be a key piece of evidence in evaluating the issuing judge's probable cause determination. A carefully drawn affidavit fully setting out the basis for "probable cause" can often spare courts and parties the necessity of conducting mini-trials on the issue of "probable cause."